**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL R. RATTAGAN, *Plaintiff-Appellant,* v. UBER TECHNOLOGIES, INC., *Defendant-Appellee.* | No. 20-16796 D.C. No. 3:19-CV-01988-EMC ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF CALIFORNIA |

Filed December 6, 2021

Before: Mary H. Murguia, Chief Judge, and J. Clifford Wallace and Morgan Christen, Circuit Judges.

## SUMMARY[*]

### California Law

The panel certified to the Supreme Court of California the following question:

> Under California law, are claims for fraudulent concealment exempted from the economic loss rule?

## ORDER

We are asked to determine whether fraudulent concealment claims are exempt from the economic loss rule under California law. This central question of state law is determinative of the instant case, and there is no controlling precedent in the California Supreme Court's decisions. Cal. R. Ct. 8.548(a). Therefore, we respectfully certify this question of law to the California Supreme Court pursuant to California Rule of Court 8.548.

### I. Factual Background

This case arises out of Uber Technologies, Inc.'s ("Uber") launch of its ridesharing platform in Argentina. In 2013, two of Uber's wholly owned Dutch subsidiaries retained Plaintiff-Appellant, Michael Rattagan, a corporate attorney in Argentina, to provide certain legal services and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

serve as the Dutch entities' legal representative in Buenos Aires. These Dutch entities would be the shareholders of a new Uber subsidiary in Argentina. In 2015, Uber representatives from the company's headquarters in San Francisco allegedly assumed responsibility for communicating with Mr. Rattagan about the launch.

In April 2016, Uber launched its platform in Argentina. According to Mr. Rattagan, however, Uber did so before its Argentine subsidiary was fully formed or registered with the proper tax authority. Mr. Rattagan alleges that despite knowing that Mr. Rattagan, as the Dutch entities' legal representative, could be subject to personal liability for Uber's violations of Argentine law, Uber concealed its launch plans from him.

Within days of the launch, law enforcement authorities raided Mr. Rattagan's office and the homes of his business colleagues. The raids occurred in connection with a charge that Mr. Rattagan, as an Uber representative, was illegally using public space for commercial gain. Mr. Rattagan also alleges that his offices were surrounded by protestors and that he and his firm received negative press in the news. Mr. Rattagan promptly requested that the Dutch entities remove him as legal representative, but the change did not occur until at least two months after the launch. He contends that, by this time, the damage to his reputation already was done. Mr. Rattagan later was charged with aggravated tax evasion for his perceived involvement with the Uber launch. The investigation received significant media attention, which Mr. Rattagan asserts harmed his reputation in his community.

In the operative complaint, Mr. Rattagan alleged claims of negligence, breach of the implied covenant of good faith and fair dealing, fraudulent concealment, and aiding and

abetting fraudulent concealment.  Applying California law, the district court concluded that Mr. Rattagan's negligence and breach of the implied covenant claims were time barred. The district court also held that the fraudulent concealment claims were foreclosed by the economic loss rule—a doctrine that prevents a party to a contract from recovering economic damages resulting from breach of contract under tort theories of liability.  Accordingly, the district court dismissed Rattagan's complaint.

On appeal, Mr. Rattagan challenges only the district court's conclusion that his fraudulent concealment claims were foreclosed by the economic loss rule.  Two of Mr. Rattagan's arguments fail: Mr. Rattagan waived the argument that his claim is shielded by the special relationship exception, and he has not plausibly alleged that his relationship with Uber was non-contractual.  This case therefore turns on Mr. Rattagan's remaining argument: fraudulent concealment claims are exempt from California's economic loss rule.  Because the fraudulent concealment issue is dispositive in Mr. Rattagan's case, because there are no California Supreme Court or appellate court decisions on point, and because federal district courts are divided on the issue, we certify Mr. Rattagan's question to the California Supreme Court.

## II.  Explanation of Certification

Federal courts sitting in diversity, as here, apply state substantive law and federal procedural law.  *In re County of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  Application of the economic loss rule is substantive and thus governed by California law.  *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050

(9th Cir. 2014). When determining state law in the absence of a decision from the relevant state's high court, this court may look to the state's courts of appeal for guidance. *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

The economic loss rule limits a party to a contract "to recover[ing] in contract for purely economic loss due to disappointed expectations," rather than in tort, "unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004). Stated differently, a party to a contract generally cannot recover for pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort. *See Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999) ("[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 44 Cal. Rptr. 2d 420, 434 (1995))). The rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson*, 102 P.3d at 273 (alteration in original) (quoting *Rich Products Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999)).

In *Robinson*, the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations. *Id.* at 274–75. The California Supreme Court reasoned that this species of fraud constitutes tortious conduct separate from a breach of the contract. *Id.* at 274. Because the affirmative misrepresentations were "dispositive fraudulent conduct," the Court expressly declined to address whether another type

of fraud—intentional concealment—likewise constitutes an independent tort warranting an exception. *Id.* at 275. The California Supreme Court explained, "Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 276. It reasoned that "fraud is a tort independent of the breach" of a contract, and moreover, "[a]llowing Robinson's claim . . . discourages [affirmative misrepresentation] in the future while encouraging a business climate free of fraud and deceptive practices." *Id.* at 275 (internal quotation marks and citation omitted).

Since the *Robinson* decision, federal district courts have confronted the issue of whether fraudulent concealment also constitutes independent tortious conduct, warranting an exception to the economic loss rule. The district courts have reached opposing conclusions. For example, the district court in *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076 (S.D. Cal. 2021), held that "[t]he narrowly tailored exception to the economic loss rule articulated in *Robinson Helicopter* does not extend to fraudulent omission claims." *Id.* at 1093. Therefore, consumers' claims that car manufacturers had knowingly failed to disclose a dangerous defect in car touch screens was precluded by the economic loss rule. *Id.* The district court in *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023 (E.D. Cal. 2013), reached the opposite conclusion. That court refused to dismiss fraudulent concealment claims related to the sale of allegedly contaminated eggs, because it held that the *Robinson* opinion "strongly suggests no meaningful distinction exists between intentional concealment and intentional misrepresentation." *Id.* at 1031.

Occasionally, such diametrically opposed holdings have appeared within the same litigation. For instance, the district court in *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.,* No. CV1706656ABFFMX, 2019 WL 3000646 (C.D. Cal. May 22, 2019), found that under *Robinson*, the economic loss rule did not apply to plaintiffs' claims for fraudulent concealment or omission. *Id.* at *6. One year later, ruling on a different plaintiff's claim, that district court concluded that it was bound by the California Supreme Court's decision in *Robinson* not to extend the exception to the economic loss rule to fraudulent omissions. *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020).

California Courts of Appeal have not addressed whether the *Robinson* exception applies to fraudulent concealment. Some appellate courts have suggested that *Robinson* extends to all claims of intentional, fraudulent conduct, *see, e.g.*, *Frank E. Maddocks, Inc. v. Univ. Med. Prods./USA, Inc.*, No. B172559, 2005 WL 2002396, at *3 (Cal. Ct. App. Aug. 22, 2005) ("the [economic loss] rule does not bar fraud and intentional misrepresentation claims"), while others have declined to apply *Robinson* beyond the "narrow circumstances" presented in that case, *see. e.g.*, *United Med. Devices, LLC v. PlaySafe, LLC*, No. B250305, 2015 WL 920695, at *6 (Cal. Ct. App. Mar. 2, 2015), *as modified on denial of reh'g* (Mar. 30, 2015).

State courts across the country have exempted fraud claims like the one Mr. Rattagan asserts from the economic loss doctrine. *See, e.g., Taylor v. Taylor*, 422 P.3d 1116, 1125 (Idaho 2018), *as corrected* (July 31, 2018) (economic loss rule does not apply where unique circumstances require a reallocation of risk); *see also Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407 (Fla.

2013) (no application outside products liability context); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (listing various species of fraud claims that are exempt from the economic loss rule).

These courts, like the *Robinson* court, have recognized that the scope of the economic loss doctrine implicates two crucial public policy concerns: "freedom of contract and abhorrence of fraud." *See Milan Supply Chain Sols., Inc. v. Navistar, Inc.,* 627 S.W.3d 125, 153 (Tenn. 2021) ("declin[ing] to announce a broad rule either extending the economic loss rule to all fraud claims or exempting all fraud claims from the economic loss rule"). On one hand, the doctrine serves the important purposes of allowing contracting parties to "reliably allocate risks and costs during their bargaining" and encouraging them to "build the cost considerations into the contract because they will not be able to recover economic damages in tort." *BRW, Inc. v. Dufficy & Sons, Inc*., 99 P.3d 66, 72 (Colo. 2004). But notwithstanding this tendency to "increase the certainty in contractual relationships," applying the rule to intentional fraud may "encourage[e] fraudulent conduct at the expense of an innocent party." *Robinson*, 102 P.3d at 276. Recovering the benefit of the bargain may afford incomplete relief to fraud victims since parties typically do not factor in the possibility of dishonesty when negotiating a contract. *Id.* at 275–76.

The unanswered question of whether fraudulent concealment claims are exempted from the economic loss rule is dispositive in the instant case. There is no controlling state precedent, and the question implicates important policy concerns. Accordingly, after careful consideration, we exercise our discretion to certify this question to the

California Supreme Court. *See* Cal. R. Ct. 8.548(a); *see also Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003) (listing the factors considered when determining whether certification is appropriate).

## III.  Certified Question

We respectfully certify the following question to the California Supreme Court:

> Under California law, are claims for fraudulent concealment exempted from the economic loss rule?

We will accept the decision of the California Supreme Court. Cal. R. Ct. 8.548(b)(2).  We acknowledge that, as the receiving court, the California Supreme Court may restate the certified question.  Cal. R. Ct. 8.548(f)(5).

## IV.  Counsel Information

The names and addresses of counsel or the parties, as required by Cal. R. Ct. 8.548(b)(1) are as follows:

> Andrew A. August, Esq., Steyer Lowenthal Boodrookas Alvarez & Smith LLP, 235 Pine Street, 15th Floor, San Francisco, California 94104, for Plaintiff Michael R. Rattagan

> Jeffrey M. Davidson and Amy S. Heath, Covington & Burling, LLP, Salesforce Tower, 415 Mission Street, Suite 5400, San Francisco, CA 94105-2533, for Defendant Uber Technologies, Inc.

## V. Conclusion

The Clerk shall forward an original and ten certified copies of this certification order, under official seal, to the California Supreme Court. Cal. R. Ct. 8.548(d). The Clerk is also ordered to transmit copies of all relevant briefs, as well as any additional record materials requested by the California Supreme Court. Cal. R. Ct. 8.548(c).

Submission of this appeal for decision is vacated and deferred pending the California Supreme Court's final response to this certification order. The Clerk is directed to administratively close this docket, pending further order. The parties shall notify the Clerk of this court within fourteen days of the California Supreme Court's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the California Supreme Court's issuance of a decision.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**