Filed 10/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SOBITA DHITAL et al., | A162817 |
| Plaintiffs and Appellants, | |
| v. | (Alameda County Super. Ct. No. RG19009260) |
| NISSAN NORTH AMERICA, INC., | |
| Defendant and Respondent. | |

Plaintiffs Sobita Dhital and Daniel Newman sued defendant Nissan North America, Inc. (Nissan), alleging the transmission in a 2013 Nissan Sentra they purchased was defective.  In their operative second amended complaint (SAC), plaintiffs asserted statutory claims under the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq.) and a common law fraud claim alleging that Nissan, by fraudulently concealing the defects, induced them to purchase the car.

The trial court sustained Nissan's demurrer to the fraudulent inducement claim (the fourth cause of action in the SAC) without leave to amend, holding the claim was barred by the "economic loss rule" discussed in *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979 (*Robinson*). The court also granted an accompanying motion to strike plaintiffs' request for punitive damages.  Plaintiffs dismissed their remaining claims with prejudice, and the court entered judgment for Nissan.

1

Plaintiffs appeal, contending the court erred by applying the economic loss rule to bar their fraudulent inducement claim. Nissan argues the court correctly applied the economic loss rule. Nissan alternatively urges this court to affirm on the ground plaintiffs did not plead the fraudulent inducement claim with sufficient particularity, a ground for demurrer not reached by the trial court.

We conclude that, under California law, the economic loss rule does not bar plaintiffs' fraudulent inducement claim. We also reject Nissan's argument that plaintiffs did not adequately plead a claim for fraudulent inducement. We therefore reverse the judgment entered in favor of Nissan and remand for further proceedings on plaintiffs' fraudulent inducement claim.[1]

## I. BACKGROUND

### A. *The SAC: Plaintiffs' Allegations About the Allegedly Defective Transmission and Nissan's Alleged Fraud*

"Because this matter comes to us after the trial court sustained the defendant's demurrer, 'we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity' of the decision below." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 635.)

In the SAC, plaintiffs alleged that, on November 4, 2012, they purchased a new 2013 Nissan Sentra from a Nissan dealership in San Leandro. On three occasions in 2015, plaintiffs took the car to an authorized Nissan repair facility because of transmission problems, including stalling, jerking, and lack of power. They eventually decided to stop using the car due

---

[1] We grant plaintiffs' unopposed request that we take judicial notice of (1) a brief filed in the Supreme Court in *Robinson*, and (2) a California superior court order discussing the economic loss rule.

2

to their concern it posed a risk to their safety and the safety of others, because "[u]ncertain and unpredictable performance of a vehicle's engine and transmission can result in sudden and unexpected movements or stalling that greatly increase the risk of a motor vehicle accident."

Plaintiffs alleged Nissan manufactured or distributed more than 500,000 vehicles in the United States that were equipped with defective continuously variable transmissions (CVT's), including plaintiffs' Sentra and other Sentras for model years 2013 through 2017. The SAC alleged: "The CVT is defective in that it causes hesitation from a stop before acceleration; sudden, hard shaking during deceleration; sudden, hard shaking and violent jerking (commonly known as 'juddering' or 'shuddering') during acceleration; and complete failure to function, each and all of which prevent a CVT-equipped vehicle from operating as intended by the driver, especially during acceleration from a complete stop." The SAC continued: "This transmission defect creates unreasonably dangerous situations while driving and increases the risk of a crash when trying to accelerate from a stop; at low speeds when drivers intend to accelerate to merge with highway traffic; and when attempting to drive uphill. The transmission defect creates a serious safety risk that can lead to accidents, injuries, or even death to the driver, the vehicles' occupants, other drivers, and pedestrians."

As to Nissan's knowledge that the transmissions were defective, plaintiffs alleged in part that Nissan "knew or should have known about the safety hazard posed by the defective transmissions before the sale of CVT-equipped vehicles from premarket testing, consumer complaints to the National Highway Traffic Safety Administration ('NHTSA'), consumer complaints made directly to Nissan and its dealers, and other sources which drove Nissan to issue Technical Service Bulletins acknowledging the

3

transmission's defect.  Nissan should not have sold, leased, or marketed the CVT-equipped vehicles without a full and complete disclosure of the transmission defect, and should have voluntarily recalled all CVT-equipped vehicles long ago."

In their statutory claims under the Song-Beverly Act (the first, second, and third causes of action in the SAC), plaintiffs alleged Nissan breached express and implied warranties and failed to repair the car within a reasonable period of time.  In the common law fraud claim that is at issue in this appeal (the SAC's fourth cause of action, entitled "Fraudulent Inducement—Concealment"), plaintiffs alleged in part that "[Nissan] and its agents intentionally concealed and failed to disclose facts relating to the defective transmission"; Nissan had exclusive knowledge of the defect and did not disclose that information to plaintiffs; "Nissan intended to deceive [plaintiffs] by concealing the known issues with the CVT transmission in an effort to sell the [car] at a maximum price"; "[Nissan] fraudulently induced [plaintiffs] to enter into a contract they would not have entered into but for [Nissan's] concealment of the defective nature of the CVT transmission"; if plaintiffs had known of the defect, they would not have purchased the car; and plaintiffs suffered damages in the form of money paid to purchase the car.

Plaintiffs alleged the defect and the resulting "[u]ncertain and unpredictable performance" of the transmission increased the risk of an accident and thus placed them at risk of physical harm.  But as the trial court later noted, plaintiffs did not allege the defect caused any personal injury or any damage to property other than the car.

In the SAC's prayer for relief, plaintiffs sought special and actual damages, rescission of the purchase contract and restitution of all amounts

4

paid, "diminution in value," incidental and consequential damages, civil penalties, punitive damages, prejudgment interest, and attorney fees.

## B. *Procedural Background*

Prior to the filing of the SAC, the court (Hon. Jo-Lynne Q. Lee) (1) sustained, with leave to amend, Nissan's demurrers to the claims for fraudulent inducement—concealment in plaintiffs' original and first amended complaints, and (2) granted, also with leave to amend, Nissan's motion to strike the punitive damages requests in those complaints.

In its demurrer to the fraud claim in plaintiffs' original complaint, Nissan did not contend the economic loss rule barred the claim, arguing on other grounds that plaintiffs had not stated a cause of action. But the trial court requested supplemental briefing on the economic loss rule and sustained the demurrer (with leave to amend) on the basis of that rule, concluding in part that "[t]he only injury identified by Plaintiffs is that they have purchase[d] a vehicle they would not have otherwise bought if they knew of its alleged defects. Such an injury is insufficient to overcome the economic loss rule."

In its order addressing Nissan's motion to strike portions of plaintiffs' original complaint, the court declined to strike certain passages throughout the complaint that Nissan had alleged were irrelevant, but granted the motion (with leave to amend) as to the punitive damages allegations. The court concluded the complaint did not include sufficient allegations to support a claim for punitive damages against a corporation, stating "the allegations in the Complaint are insufficient to establish that 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice [is] on the part of an officer, director, or managing agent of the corporation.' ([Civ. Code,] § 3294, [subd.] (b).)"

Plaintiffs filed the SAC in January 2020.  Nissan again demurred to the claim for fraudulent inducement—concealment (the fourth cause of action in the SAC) and moved to strike portions of the SAC, including the punitive damages allegations.  In its demurrer, Nissan argued plaintiffs' fraud claim was barred by the economic loss rule and was not pleaded with sufficient specificity.  Nissan contended in its motion to strike that the SAC's allegations supporting corporate liability for punitive damages were still insufficient, and that plaintiffs had not adequately pleaded a fraud claim that would support an award of punitive damages.  A hearing on the demurrer and the motion to strike was set for May 2020, but the matter was taken under submission without hearing because plaintiffs did not contest the tentative ruling against them.

The court (Hon. Richard Seabolt) sustained the demurrer to the fraud cause of action, this time without leave to amend.  The court held the fraud claim was barred by the economic loss rule because plaintiffs did not allege the defective transmission in their car caused any personal injury or any damage to property other than the car.  The court concluded plaintiffs' claim did not fall within "the 'narrow' exception to the economic loss rule" discussed by the Supreme Court in *Robinson* (a decision we discuss in pt. II.B., *post*), because (1) the claim rests on alleged concealment, rather than affirmative misrepresentations, and (2) plaintiffs did not "plausibly allege 'damages independent of [their] economic loss.' "

The court also granted, without leave to amend, the motion to strike the punitive damages allegations.  It reasoned that plaintiffs do not have a viable fraud claim that would support an award of punitive damages, and that such damages are not an available remedy for plaintiffs' remaining claims under the Song-Beverly Act.  It also explained that the FAC's

6

allegations remained insufficient to establish ratification by a senior corporate official as required to support a claim for punitive damages against a corporation (Civ. Code, § 3294, subd. (b)).

Following the court's ruling, plaintiffs dismissed their remaining claims with prejudice, and the court entered judgment for Nissan in April 2021.

Plaintiffs appealed.

## II. DISCUSSION

### A. *Standard of Review*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) " 'In considering a trial court's order sustaining a demurrer without leave to amend, " 'we review the trial court's result for error, and not its legal reasoning.' " ' [Citation.] We ' "affirm the judgment if it is correct on any theory." ' " (*Munoz v. Patel* (2022) 81 Cal.App.5th 761, 771.)

Similarly, " [t]he standard of review for an order on a motion to strike punitive damages allegations is de novo. [Citation.] "In passing on the correctness of a ruling on a motion to strike, judges read allegations of a pleading subject to a motion to strike as a whole, all parts in their context, and assume their truth." ' " (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 704.)

We review the court's denial of leave to amend for abuse of discretion. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "[W]e must

decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid.*)

## B. *The Economic Loss Rule*

As noted, the trial court sustained Nissan's demurrer to plaintiffs' claim for fraudulent inducement—concealment on the ground it was barred by the economic loss rule. We conclude the economic loss rule does not bar plaintiffs' fraud claim.[2]

The economic loss rule provides that, "[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 922 (*Sheen*).) For claims arising from alleged product defects, "[e]conomic loss consists of ' " ' "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . ." ' " ' " (*Robinson, supra,* 34 Cal.4th at p. 988.)

The *Sheen* court noted the economic loss rule "has been applied in various contexts. First, it carries force when courts are concerned about imposing ' "liability in an indeterminate amount for an indeterminate time to

---

[2] We note that, in *Rattagan v. Uber Technologies, Inc.* (9th Cir. 2021) 19 F.4th 1188, 1193 (*Rattagan*), the United States Court of Appeals for the Ninth Circuit certified to the California Supreme Court the following question: "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?" (Cal. Rules of Court, rule 8.548.) The California Supreme Court granted the Ninth Circuit's request for certification, and the case is currently pending. (*Rattagan v. Uber Technologies,* request for certification granted Feb. 9, 2022, S272113.)

an indeterminate class." ' " (*Sheen, supra*, 12 Cal.5th at p. 922, quoting *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 414.)

Second, "[i]n another recurring set of circumstances, the rule functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." (*Sheen, supra*, 12 Cal.5th at p. 922, citing *Robinson, supra*, 34 Cal.4th at p. 988, and other cases.) The Restatement states this form of the economic loss rule as follows: "[T]here is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." (Rest.3d Torts, Liability for Economic Harm, § 3; see *Sheen, supra*, at p. 923.)

The *Robinson* court explained: " ' " '[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' ". . .' [Citation.] The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. [Citation.] Quite simply, the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.' " (*Robinson, supra*, 34 Cal.4th at p. 988.)

The *Robinson* court also described instances where tort damages are permitted in contract cases.[3] " 'Tort damages have been permitted in contract

---

[3] Like the trial court and the parties, we will treat plaintiffs' statutory warranty claims under the Song-Beverly Act as the equivalent of contract claims for purposes of determining whether the economic loss rule applies to bar their (allegedly overlapping) fraud claim. But we note the assumption on which this approach to plaintiffs' claims rests—that the economic loss rule may be applied to statutory claims of this kind—is not one we necessarily accept, and nothing in this opinion should be read as passing on it. We note

9

cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy [citation]; or where the contract was fraudulently induced. [Citation.]' [Citation.] '[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.' " (*Robinson, supra,* 34 Cal.4th at pp. 989–990.)

Here, the fraudulent inducement exception to the economic loss rule applies. Plaintiffs allege that Nissan, by intentionally concealing facts about the defective transmission, fraudulently induced them to purchase a car. Fraudulent inducement is a viable tort claim under California law. "The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. [Citations.] Fraud in the inducement is a subset of the tort of fraud. It 'occurs when " 'the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable.' " ' " (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294–295; accord, *Geraghty v. Shalizi* (2017) 8 Cal.App.5th 593, 597.)

To hold, at the demurrer stage, that plaintiffs' fraud claim is barred by the economic loss rule, we would need to conclude, as Nissan urges us to do,

---

that the Song-Beverly Act states the remedies available for violations are nonexclusive. The statute provides in pertinent part: "The remedies provided by this chapter are cumulative and shall not be construed as restricting any remedy that is otherwise available." (§ 1790.4; see *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, 968, fn. 12 (*Anderson*).)

that (1) despite the Supreme Court's statement in *Robinson*, there is no exception to the economic loss rule for fraudulent inducement claims (or at least no exception that encompasses the claim plaintiffs allege in the SAC), or (2) plaintiffs have not adequately pleaded a claim for fraudulent inducement under California law (a question we address in pt. II.C., *post*). We reject both arguments and conclude the economic loss rule does not bar plaintiffs' claim.

Nissan contends that, under *Robinson*, fraud claims between contracting parties "can proceed only if they are truly independent of the contract and involve affirmative misrepresentations," and that plaintiffs' fraud claim (based on concealment) does not satisfy either condition. The trial court applied the same two requirements, holding plaintiffs' fraud claim was barred because it involved concealment (rather than affirmative misrepresentations) and because plaintiffs did not allege damages independent of their economic loss.

We do not agree with the trial court's and Nissan's reading and application of *Robinson*. *Robinson* did not hold that any claims for fraudulent inducement are barred by the economic loss rule. Quite the contrary, the *Robinson* court affirmed that tort damages *are* available in contract cases where the contract was fraudulently induced. (*Robinson*, *supra*, 34 Cal.4th at pp. 989–990.) The *Robinson* court then addressed the fraud claims that were presented in that case, involving alleged fraud (both affirmative misrepresentations and intentional concealment) that occurred *during the performance* of a contract—Dana, a supplier of helicopter parts (1) provided false "certificates of conformance" to the manufacturer (Robinson) stating the parts conformed to contractual requirements and

11

(2) allegedly concealed information about the parts. (*Id.* at p. 990; see *id.* at pp. 986–987.)

As to those claims, the court focused on Robinson's "fraud and misrepresentation claim based on Dana's provision of the false certificates of conformance." (*Robinson, supra*, 34 Cal.4th at p. 990.) The court concluded this tortious conduct "was separate from" Dana's breach of contract, which involved its provision of the nonconforming parts. (*Id.* at p. 991.) In addition, Dana's provision of faulty parts exposed Robinson to liability for personal damages if a helicopter crashed. (*Ibid.*) The court thus held that "the economic loss rule does not bar Robinson's fraud and intentional misrepresentation claims because they were independent of Dana's breach of contract." (*Ibid.*) And "[b]ecause Dana's affirmative intentional misrepresentations of fact (i.e., the issuance of the false certificates of conformance) are dispositive fraudulent conduct related to the performance of the contract," the court stated that "we need not address the issue of whether Dana's intentional concealment constitutes an independent tort."[4] (*Robinson,* at p. 991.)

The *Robinson* court explained that its holding was strongly supported by California's public policy favoring the punishment and deterrence of fraud. (*Robinson, supra*, 34 Cal.4th at pp. 991–992.) The court rejected Dana's

_____

[4] Nissan is thus incorrect in asserting that the *Robinson* court "held" fraud claims involving affirmative misrepresentations are the only ones that survive the economic loss rule. Instead, the *Robinson* court did not reach the question whether the concealment claims presented in that case were independent of the contract claims. (*Robinson, supra*, 34 Cal.4th at p. 991.) For that reason, as noted, the Ninth Circuit recently concluded it was an open question whether fraudulent concealment claims are "exempted" from the economic loss rule under California law and certified that question to the California Supreme Court. (*Rattagan, supra*, 19 F.4th at pp. 1191–1193.)

12

argument that a breach of contract remedy was sufficient, noting that, while contracting parties generally can agree to allocate their risks, benefits, and obligations as they see fit, " '[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract.' [Citation.] No rational party would enter into a contract anticipating that they are or will be lied to." (*Id.* at p. 993.)

Finally, the *Robinson* court noted its holding was "narrow," in part because it had only reached the question whether Robinson's affirmative misrepresentation claims were viable. (*Robinson*, *supra*, 34 Cal.4th at p. 993.) The court stated: "Nor do we believe that our decision will open the floodgates to future litigation. Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss. In addition, '[i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.]' . . . We trust the trial courts of this state to enforce this pleading requirement." (*Ibid.*)

Applying *Robinson* here (and cognizant that our Supreme Court may soon provide additional guidance), we conclude plaintiffs' claim for fraudulent inducement by concealment is not subject to demurrer on the ground it is barred by the economic loss rule. *Robinson* left undecided whether concealment-based claims are barred by the economic loss rule. What follows from its analysis, however, is that concealment-based claims for fraudulent inducement are not barred by the economic loss rule. The reasoning in *Robinson* affirmatively places fraudulent inducement by concealment outside the coverage of the economic loss rule. We now hold that the economic loss rule does not cover such claims. First, as discussed,

13

*Robinson* identified fraudulent inducement as an existing exception to the economic loss rule, before it proceeded to analyze the particular claims at issue in that case relating to fraud during the performance of a contract. (*Robinson*, *supra*, 34 Cal.4th at pp. 989–990.)  For fraudulent inducement and the other existing exceptions listed in *Robinson*, " 'the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.' " (*Id.* at p. 990.)

In our view, that independence is present in the case of fraudulent inducement (whether it is achieved by intentional concealment or by intentional affirmative misrepresentations), because a defendant's conduct in fraudulently inducing someone to enter a contract is separate from the defendant's later breach of the contract or warranty provisions that were agreed to.  In *Anderson*, *supra*, 74 Cal.App.5th 946, the Court of Appeal contrasted these two types of conduct, although not in the context of determining the applicability of the economic loss rule.  (*Id.* at pp. 966–967.)  In *Anderson*, after purchasing a pickup truck that turned out to be defective, the plaintiffs sued Ford and prevailed at trial on both a Song-Beverly Act warranty cause of action and a cause of action for "fraud in the inducement— concealment." (*Id.* at p. 950.)

On appeal, Ford argued the plaintiffs could not recover both a statutory civil penalty under the Song-Beverly Act and punitive damages (the latter being based on the fraud claim and a claim under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.)); Ford argued both awards were based on " 'substantially the same conduct.' " (*Anderson, supra*, 74 Cal.App.5th at pp. 950; *id.* at pp. 961, 966.)  The appellate court disagreed and explained that "the punitive damages and statutory penalties were based

14

on different conduct that took place at different times.  The punitive damages were based on conduct underlying the fraud/CLRA causes of action and took place before the sale.  The civil penalty was based on defendant's postsale failure to comply with its Song-Beverly Act obligations to replace the vehicle or make restitution when reasonable attempts to repair had failed." (*Id.* at p. 966.)

Similarly, here, plaintiffs' fraudulent inducement claim alleges presale conduct by Nissan (concealment) that is distinct from Nissan's alleged subsequent conduct in breaching its warranty obligations.  As Nissan notes, plaintiffs' SAC includes some allegations that do not fall neatly into one of these two categories.  For example, in their fraudulent inducement cause of action, plaintiffs include some allegations about the failure of Nissan to make disclosures "on the date of each of the [postsale] repair attempts," in addition to alleging presale concealment.  But at the pleading stage, we decline to hold plaintiffs' fraud claim (based in part on presale concealment) is barred by the economic loss rule.[5]  And contrary to Nissan's view, we do not read *Robinson*'s discussion of the claims there involving fraud during contractual performance

---

[5] We do not preclude the possibility that, depending on the evidentiary record developed at summary judgment or trial, a fraudulent inducement claim could be found not to be independent of a plaintiff's contract or warranty claims.  (See *Anderson*, *supra*, 74 Cal.App.5th at p. 967 [appellate court's determination as to which conduct supported plaintiffs' claims was "[b]ased on the pleadings and the trial evidence"]; *Santana v. FCA US, LLC* (2020) 56 Cal.App.5th 334, 345–346 [cited by Nissan; trial evidence did not show defendant intentionally concealed a defect prior to plaintiff's purchase of vehicle]; *Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1130–1132 [trial court properly relied on economic loss rule in granting summary judgment on fraudulent inducement claim in connection with contract to perform a study of food disinfection equipment; "[b]ecause Eco Safe's showing bore only on Food Safety's actual performance under the contract, it does not demonstrate fraudulent inducement"].)

(and, within that category, permitting certain claims alleging affirmative misrepresentations but not reaching the viability of the accompanying intentional concealment claims) as a narrowing or limitation of the existing exception for fraudulent inducement claims or a requirement that all inducement claims must be supported by allegations of affirmative misrepresentations. (*Robinson*, *supra*, 34 Cal.4th at pp. 989–991.)

As the parties note and as the Ninth Circuit outlined in *Rattagan*, *supra*, 19 F.4th at pp. 1191–1192, courts in other states have reached differing conclusions as to the scope of the economic loss rule and the extent to which it precludes fraud claims. (Compare, e.g., *Milan Supply Chain Solutions v. Navistar, Inc.* (Tenn. 2021) 627 S.W.3d 125, 153–154 [declining to adopt "a broad rule either extending the economic loss rule to all fraud claims or exempting all fraud claims from the economic loss rule," but holding fraudulent inducement claims are barred by the rule if the only misrepresentations concern the quality or character of the goods sold and the contract is "between sophisticated commercial business entities"], with, e.g., *Van Rees v. Unleaded Software, Inc.* (Colo. 2016) 373 P.3d 603, 608 [economic loss rule did not bar fraudulent inducement claims; "The court of appeals seemed concerned that if it did not affirm the dismissal of the tort claims in this case, the purposes underlying the economic loss rule would not be served, as tort law would swallow contract law. [Citation.] However, we also must be cautious of the corollary potential for contract law to swallow tort law."].)

Similarly (as also outlined by the parties and the Ninth Circuit), federal district courts applying California law have diverged on this point. (Compare, e.g., *White v. FCA US LLC* (N.D.Cal. 2022) 2022 U.S.Dist.LEXIS 146604, *9–*13 [under California law, fraudulent *inducement* claims fall within a well-recognized exception to the economic loss rule that is separate

16

from the additional exception discussed in *Robinson* for some fraudulent *performance* claims], with, e.g., *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation* (C.D.Cal. 2020) 483 F.Supp.3d 838, 848–850 [under California law, claim for fraudulent inducement by omission was barred by economic loss rule]; see *Rattagan*, *supra*, 19 F.4th at pp. 1191–1192 [noting district courts have reached different conclusions as to whether the economic loss rule bars claims of fraudulent concealment].)

We acknowledge the differing views taken by courts that have considered this issue. But for the reasons we have discussed above, we conclude that, under California law, the economic loss rule does not bar plaintiffs' claim here for fraudulent inducement by concealment. Fraudulent inducement claims fall within an exception to the economic loss rule recognized by our Supreme Court (*Robinson*, *supra*, 34 Cal.4th at pp. 989–990), and plaintiffs allege fraudulent conduct that is independent of Nissan's alleged warranty breaches.[6] The trial court erred by sustaining Nissan's demurrer to plaintiffs' fraud claim on the ground it was barred by the economic loss rule.

## C. *The Sufficiency of the Allegations in the SAC*

As an alternative ground for affirmance, Nissan argues plaintiffs did not plead their claim for fraudulent inducement by concealment with

---

[6] We note the Restatement takes the view that the economic loss rule generally does not bar fraud claims (although it precludes most contract-related *negligence* claims). (Rest.3d Torts, Liability for Economic Harm, *supra*, § 9, com. a ["The economic-loss rule is meant to protect contractual allocations of risk against interference by the law of tort. Claims for fraud rarely cause such interference because parties to a contract do not usually treat the chance that they are lying to each other as a risk for their contract to allocate. . . . Liability in tort for fraud thus helps to protect the integrity of the contractual process and sometimes furnishes useful remedies that the law of contract does not as readily provide."]; see *id.*, § 3, com. d.)

17

sufficient specificity. The trial court did not reach this ground for demurrer. We conclude the claim is adequately pleaded.

"As with all fraud claims, the necessary elements of a concealment/suppression claim consist of ' "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." ' " (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1185–1186.) Suppression of a material fact is actionable when there is a duty of disclosure, which may arise from a relationship between the parties, such as a buyer-seller relationship. (*Id.* at pp. 1186–1187.) Fraud, including concealment, must be pleaded with specificity. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 132.)

Plaintiffs alleged the above elements of fraud in the SAC. As we have discussed, plaintiffs alleged the CVT transmissions installed in numerous Nissan vehicles (including the one plaintiffs purchased) were defective; Nissan knew of the defects and the hazards they posed; Nissan had exclusive knowledge of the defects but intentionally concealed and failed to disclose that information; Nissan intended to deceive plaintiffs by concealing known transmission problems; plaintiffs would not have purchased the car if they had known of the defects; and plaintiffs suffered damages in the form of money paid to purchase the car.

In its short argument on this point in its appellate brief, Nissan argues plaintiffs did not adequately plead the existence of a buyer-seller relationship between the parties, because plaintiffs bought the car from a Nissan dealership (not from Nissan itself). At the pleading stage (and in the absence of a more developed argument by Nissan on this point), we conclude

18

plaintiffs' allegations are sufficient. Plaintiffs alleged that they bought the car from a Nissan dealership, that Nissan backed the car with an express warranty, and that Nissan's authorized dealerships are its agents for purposes of the sale of Nissan vehicles to consumers. In light of these allegations, we decline to hold plaintiffs' claim is barred on the ground there was no relationship requiring Nissan to disclose known defects.

Nissan also contends plaintiffs did not provide specifics about what Nissan should have disclosed. But plaintiffs alleged the CVT transmissions were defective in that they caused such problems as hesitation, shaking, jerking, and failure to function. The SAC also alleged Nissan was aware of the defects as a result of premarket testing and consumer complaints that were made both to NHTSA and to Nissan and its dealers. It is not clear what additional information Nissan believes should have been included.[7] We decline to hold (again in the absence of a more developed argument on this point) that plaintiffs were required to include in the SAC more detailed allegations about the alleged defects in the CVT. We conclude plaintiffs' fraud claim was adequately pleaded.

For the foregoing reasons, we will reverse the trial court's order sustaining Nissan's demurrer to the SAC's fourth cause of action (the claim for fraudulent inducement by concealment). We will also reverse the court's

---

[7] Nissan does note that, in *Santana v. FCA US, LLC, supra,* 56 Cal.App.5th at pp. 345–346 (an appeal after a jury verdict), the appellate court stated the evidence of fraudulent inducement presented at trial was insufficient, in part because there was no "evidence that, prior to Santana's purchase of the vehicle, Chrysler was aware of a defect in the [engine component at issue] that it was either *unwilling or unable to fix*." (Italics added.) We decline to hold, based on the *Santana* court's brief discussion and Nissan's reference to it, that it is essential for a plaintiff's allegations to include this language at the pleading stage.

order granting Nissan's motion to strike plaintiffs' punitive damages allegations, as the basis for that order was the court's conclusion that plaintiffs had not stated a viable fraud claim.[8]

### III. DISPOSITION

The April 2021 judgment is reversed. The trial court's orders (1) sustaining Nissan's demurrer to plaintiffs' claim for fraudulent inducement by concealment (the fourth cause of action in the SAC), and (2) granting Nissan's motion to strike the SAC's punitive damages allegations, are reversed. The trial court is directed to enter a new order or orders overruling the demurrer and denying the motion to strike. The case is remanded for further proceedings on plaintiffs' claim for fraudulent inducement by concealment, plaintiffs having dismissed their other claims with prejudice. Plaintiffs shall recover their costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
GOLDMAN, J.

---

[8] As noted, in its motion to strike filed in the trial court, Nissan also contended the SAC's allegations were not sufficient to support corporate liability for punitive damages. The trial court did not reach that question in striking the SAC's punitive damages allegations, and Nissan does not develop on appeal an argument that this court should affirm the striking of the punitive damages allegations on that alternative ground (touching on this point only briefly in a footnote). We decline to address this question.

Trial Court:  Superior Court of California, County of Alameda

Trial Judge:  Hon. Richard Seabolt

Counsel:     Knight Law Group, Steve Mikhov, Christopher Swanson, Roger R. Kirnos; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Marc J. Poster, Alana H. Rotter for Plaintiffs and Appellants.

              Shook, Hardy & Bacon, Amir Nassihi, M. Kevin Underhill for Defendant and Respondent.